UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TIONA VANHAERENTS,

    Plaintiff,

v.                         CASE No. 8:07-CV-2263-T-TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

## ORDER

The plaintiff in this case seeks judicial review of the denial of her claims for Social Security disability benefits and supplemental security income payments.[1] The decision of the Commissioner of Social Security finds that the plaintiff could return to past relevant work, purportedly on the basis of testimony of a vocational expert. However, the findings regarding the past work are not consistent with the expert's testimony. Thus, the

---

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 14).

findings are not supported by substantial evidence. Accordingly, the decision will be reversed and the matter remanded for further proceedings.

I.

The plaintiff, who was forty-two years old at the time of the administrative hearing and who has a ninth grade education (Tr. 361, 390), has worked as a collection agent, telemarketer, and appointment scheduler (Tr. 358, 359).[2] She filed claims for Social Security disability benefits and supplemental security income payments, alleging that she became disabled due to knee pain, back pain, headaches, and concentration problems (Tr. 83, 86). The claims were denied initially and upon reconsideration.

The plaintiff, at her request, then received a de novo hearing before an administrative law judge. The law judge adjourned the hearing initially to clarify the record as to the plaintiff's gainful work activities after her onset date in 2003 and her incarceration record (Tr. 400). A second hearing was subsequently conducted (Tr. 353-85). After that hearing, the law judge determined that the plaintiff has severe impairments of obesity, high blood pressure, and depression (Tr. 14). He found that these impairments

---

[2]The plaintiff also reported that she completed the tenth grade (Tr. 295, 321).

restricted the plaintiff to light work and that she is capable of performing routine, repetitive tasks that do not require visual depth perception, frequent climbing or crawling, working at unprotected heights, or more than occasional crouching, kneeling, prolonged standing, or prolonged sitting (Tr. 16). The law judge, citing the testimony of a vocational expert, concluded that, despite these limitations, the plaintiff could return to her past work as a telephone collection agent and as a receptionist (Tr. 19). Accordingly, the law judge decided that the plaintiff was not disabled (id.). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits and supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or

psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D). The Act provides further that a claimant is not disabled if she is capable of performing her previous work. 42 U.S.C. 423(d)(2)(A). Furthermore, in order to receive disability benefits, the plaintiff must show that she became disabled before her insured status expired on September 30, 2005. 42 U.S.C. 423(c)(1); Demandre v. Califano, 591 F.2d 1088, 1090 (5th Cir. 1979), cert. denied, 444 U.S. 952. There is not a similar requirement with respect to the plaintiff's claim for supplemental security income payments.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary

conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004)(en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff challenges the law judge's decision on several grounds. At least one warrants reversal.

The plaintiff contends that the law judge mischaracterized the vocational expert's testimony in finding that she could return to past work (Doc. 17, p. 8). At the hearing, the vocational expert testified that the plaintiff's past work was sedentary and included the jobs of collection clerk with an SVP of 5, and telemarketer and appointment clerk, both with an SVP of 3 (Tr. 379).[3] In response to the law judge's hypothetical that more, or less, covered the plaintiff's residual functional capacity (compare Tr. 16, 379), the vocational expert opined that a person with those restrictions could perform the jobs of appointment clerk and telemarketer (Tr. 379). Yet, the law judge found that, based on credited testimony from the vocational expert, the plaintiff is capable of performing work as a telephone collection agent and as a receptionist (Tr. 19). However, those are not the same jobs that the expert testified that the plaintiff could perform.

---

[3]The plaintiff's past work was actually scheduling physicals, but the vocational expert opined that appointment clerk was the most relevant job listed in the Dictionary of Occupational Titles ("DOT") (Tr. 379).

-6-

Thus, the job of telephone collection agent is not the same as that of telemarketer. As the expert explained, those jobs have different DOT numbers (Tr. 379). Even more significant, they have different SVP ratings (id.).

The job of collection clerk has an SVP of 5, which reflects skilled work. See Social Security Ruling 00-4p, 2000 WL 1898704 (S.S.A.). The job of telemarketer, as indicated, has an SVP of 3, which indicates semi-skilled work. Id. at *3; see 20 C.F.R. 404.1568, 416.968. Under these circumstances, the expert's testimony that the plaintiff could perform the job of telemarketer does not support the finding that the plaintiff could perform the job of telephone collection agent.

With respect to the job of receptionist, the plaintiff maintains that it was "an outright fabrication by the ALJ" to conclude that the vocational expert included receptionist in the list of jobs the plaintiff could perform (Doc. 17, p. 8). While it may not have been an outright fabrication, it clearly was a mistake.

To begin with, the plaintiff did not indicate that she had previously worked as a receptionist (Tr. 359). Furthermore, when the expert

was asked to state the plaintiff's past jobs, he did not list receptionist (Tr. 379). Moreover, when the expert was asked whether there were any jobs that someone with (more or less) the plaintiff's profile could perform, he did not identify the job of receptionist (id.). In short, there is no evidence in the record supporting the finding that the plaintiff previously worked as a receptionist or that she could return to that work.

The Commissioner asserts that "[t]he ALJ actually wrote that, based on the VE testimony, he (the ALJ himself) found Plaintiff could work as a telephone collection agent and receptionist, because the demands of these jobs, which is what the VE described, were within her abilities" (Doc. 22, p. 11). The expert, however, did not describe the demands of the job of receptionist, and, in fact, did not ever mention that job.

Moreover, the Commissioner is incorrect to say that "the VE, in describing Plaintiff's past work, described her receptionist work as 'closest to an appointment clerk'" (id.). What the expert actually said was that the plaintiff "scheduled physicals, that would be closest to an appointment clerk" (Tr. 379). At no point did the expert liken the job of scheduling physicals to that of a receptionist.

The evidence in the record therefore fails to support the finding that the plaintiff could return to past relevant work as a telephone collection agent and as a receptionist. That error warrants reversal.

It is appropriate to add that, on remand, the Commissioner should clarify his findings regarding the plaintiff's right knee impairment. The plaintiff asserts that the law judge erred in failing to find that her knee impairment was severe (Doc. 17, p. 9).

The law judge, in bold print, found that the plaintiff has severe impairments of obesity, high blood pressure, and depression (Tr. 14). However, the next sentence stated that "the record shows that the claimant suffers from obesity, high blood pressure, depression and right knee pain" (Tr. 15). The law judge added that "the impairments enumerated in this paragraph are 'severe'" (id.).

Nevertheless, in the next paragraph, the law judge stated (id.):

> [A]lthough it is noted that the claimant was prescribed a bracing device for her right knee in 2004, there is no mention of an impairment associated with either of her knees in the medical records covering the claimant's care in 2005, 2006, or 2007. Based on the foregoing evidence, the undersigned finds that the impairments enumerated in this paragraph are not "medically determinable

severe impairments" within the parameters of applicable legal authority.

The law judge, however, in his finding of the plaintiff's residual functional capacity, included restrictions to no more than occasional prolonged standing and prolonged sitting (Tr. 16), while in his hypothetical question to the vocational expert he included an occasional limitation to prolonged standing and a sit/stand option (Tr. 379). These restrictions are not the same, but they may be equivalent. Moreover, they would seem to stem from the plaintiff's knee condition, at least when combined with her obesity.

In light of the fact that a remand is required in this case, it is unnecessary to decide whether the confusing discussion about the plaintiff's knee problem constitutes reversible error. In all events, the findings concerning this problem should be clarified on remand.

The plaintiff also challenges the law judge's evaluation of her depression (Doc. 17, p. 4). The law judge concluded that the plaintiff's depression, though severe, is not disabling (Tr. 19). The plaintiff argues that the law judge selectively ignored pieces of evidence regarding her allegedly disabling depression (Doc. 17, p. 4).

The Commissioner sent the plaintiff to psychologist Gerald Hodan, Ph.D., for a consultative exam in October 2004. Dr. Hodan assigned the plaintiff a Global Assessment of Functioning ("GAF") score of 60 (Tr. 171). Subsequently, the plaintiff sought help for her mental impairments, for the first time, in December 2004, from nurse practitioners ("ARNPs") at the Suncoast Center for Community Health. There, the plaintiff would see ARNPs every few months who assigned her GAF scores ranging from 48 to 52 (Doc. 17, p. 5). The GAF scale "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." <u>Diagnostic and Statistical Manual of Mental Disorders,</u> (DSM-IV-TR) (4th ed., Text Revision), p. 34. A rating of 41-50 reflects "[s]erious symptoms (<u>e.g.</u>, suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (<u>e.g.</u>, no friends, unable to keep a job)" (<u>id.</u>). A rating of 51-60 reflects "[m]oderate symptoms (<u>e.g.</u>, flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (<u>e.g.</u>, few friends, conflicts with peers or co-workers)" (<u>id.</u>).

The plaintiff argues that the law judge placed too much emphasis on Dr. Hodan's assigned GAF score of 60. She contends that the law judge "literally ignored a litany of other records which show GAF scores from 48 to 52" (Doc. 17, p. 5). However, the plaintiff admitted that "the ALJ commented that Vanhaerents' mental health records reflected 'Her GAF's range from 48-60'" (id., p. 4). The law judge specifically referred to the GAF scores between 48 and 52 in his opinion (see Tr. 15, 19). Importantly, the law judge identified depression as a severe impairment (Tr. 14). He discussed the medical evidence at length and concluded that she has moderate difficulties with regard to concentration, persistence, or pace (Tr. 16). Accordingly, the law judge did not err in his consideration of this evidence.

Moreover, to the extent that the plaintiff relies heavily upon the GAF scores, that reliance is misplaced. In the first place, a GAF score is of limited, if not questionable, value. See Wind v. Barnhart, 2005 WL 1317040 at *6 n. 5 (11th Cir. 2005)(unpub. dec.); DeBoard v. Commissioner of Social Security, 2006 WL 3690637 at *3-*4 (6th Cir. 2006)(unpub. dec.). Further, the GAF scores upon which the plaintiff relies were given by ARNPs, and,

as the Commissioner points out, such individuals are not acceptable medical sources under the regulations (Doc. 22, p. 9).

Notably, no treating or examining psychiatrist or psychologist opined that the plaintiff was disabled due to a mental impairment. Moreover, Dr. Hodan said that the plaintiff did not have "severe impairments in attention, concentration or memory functions," and that "[s]he appears capable of following simple as well as somewhat detailed instructions" (Tr. 170). The law judge's findings are consistent with this opinion.

In addition, the plaintiff cannot obtain support on this contention from her own testimony. The law judge discounted her testimony, and the plaintiff did not challenge that credibility determination.

As previously explained, it is not enough for the plaintiff to show that there is evidence that would support a finding of disabled. Rather, she must demonstrate that the evidence compels that result. The evidence regarding the plaintiff's mental impairment does not reach that level.

It is, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is hereby REVERSED, and the matter is REMANDED to the Commissioner for further proceedings. The Clerk shall enter judgment in accordance with this Order and CLOSE this case.

DONE and ORDERED at Tampa, Florida, this 24th day of May, 2009.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE